UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JULIAN CAMPOS, ROBERTO BARAHONA, and MARTIN MORALES, | § § § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:18-CV-01362-X |
| HMK MORTGAGE, LLC and HMK LTD., | § § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

This case stems from home purchases and mortgages between the plaintiffs Julian Campos, Roberto Barahona, and Martin Morales (collectively "plaintiffs") and the defendants HMK Mortgage, LLC ("HMK Mortgage") and HMK Ltd. (collectively "defendants"). Before the Court are a motion from the plaintiffs to strike and dismiss defendants' counterclaim [Doc. No. 43] and a combination motion for summary judgment from HMK Ltd. and motion for partial summary judgment from HMK Mortgage [Doc. No. 52]. Both motions are now ripe. For the reasons expressed below, the Court **GRANTS** the plaintiffs' motion to strike as to HMK Mortgage's counterclaim, **DENIES** the plaintiffs' motion to strike as to HMK Ltd.'s counterclaim, **DENIES** the plaintiffs' motion to dismiss as to HMK Ltd.'s counterclaim, **GRANTS** HMK Ltd.'s motion for summary judgment as to claims not related to architectural barriers, **DENIES** HMK Ltd.'s motion for summary judgment as to claims related to

1

architectural barriers, and **DENIES** HMK Mortgage's motion for partial summary judgment.

## I. Factual Background

Campos, Barahona, and Morales each rented homes from HMK Ltd.  They allege, as renters, HMK Ltd. required them go to the HMK office to submit a request for repairs, despite that one of the plaintiffs, Morales, is confined to a wheelchair.

In 2016, Dallas adopted "Minimum Urban Rehabilitation Standards" in amending Chapter 27 of the Dallas City Code.  That ordinance rendered HMK Ltd.'s nearly 400 rental properties noncompliant.  HMK Ltd. opted to leave the rental business and informed its tenants they would have to leave.  A court halted its eviction efforts for reasons other than nonpayment, and Dallas agreed to delay enforcement of Chapter 27 as to HMK Ltd. while its tenants found places to relocate. HMK Ltd. offered many tenants the option to buy their homes (or another HMK Ltd. home).  The plaintiffs all entered into contracts of sale with HMK Ltd. to buy a home, which contained a release of HMK Ltd. for all claims and liabilities arising out of or related to their leases with HMK Ltd.

HMK Mortgage financed the homes HMK Ltd. sold.[1]  Among other things, the plaintiffs allege such problems as a failure to receive the required disclosures,

---

[1] Plaintiffs allege the mortgage agreements contained a number of objectionable clauses, such as:

- allowing HMK right of entry onto the property of Mr. Campos, Mr. Barahona, or Mr. Morales;
- requiring payment to HMK for making repairs;
- requiring payment for an appraisal of the property;
- restricting the rental or lease of the properties;

disclosure that the plaintiffs were under no obligation to sign the agreement, and that HMK Mortgage failed to translate, explain, or give copies of the documents to the plaintiffs.

Morales also raises issues with HMK Ltd. and HMK Mortgage's office having architectural barriers that violate the Americans with Disabilities Act and related Texas law, such as a service counter too high for individuals in wheelchairs. Morales also alleges that HMK Ltd. prevented him from going inside the only house it would sell him because it failed to provide a ramp or other accessible route inside.

Procedurally, the Court allowed the plaintiffs' first amended complaint on May 16, 2019, which added HMK Ltd. as a defendant. The Court also allowed the plaintiffs' second amended complaint on June 24, 2019, which, among other things, added claims against HMK Mortgage for retaliation under the Fair Housing Act for its actions to enforce paragraph 11 of the Deeds of Trust. The plaintiffs served this on HMK Ltd. electronically, and HMK Ltd. voluntarily appeared and answered, filing the complained-of pleading on September 4, 2019.

The live (second amended) complaint includes claims from all plaintiffs for violations of: (1) the federal Truth in Lending Act; (2) the Texas Deceptive Trade Practices Act; (3) the federal Fair Housing Act; (4) the Texas Fair Housing Act; and

---

- causing the Plaintiffs to waive their right to an inspection of their houses;
- lacking any grace period at all for monthly payments; and
- requiring delivery of current annual statements itemizing the income and expenses of the properties to HMK.

Plaintiffs' Second Amended Complaint ¶29 [Doc. No. 39].

(5) the federal Equal Credit Opportunity Act.  Additionally, Morales brings claims against HMK Mortgage and HMK Ltd. for: (1) the Americans with Disabilities Act; (2) Chapter 121 of the Texas Human Resources Code; and (3) the Texas Architectural Barriers Act.

## II. Legal Standards

A motion to strike a counterclaim, a motion to dismiss that counterclaim, and a motion for summary judgment are before the Court.  Regarding the motion to strike the counterclaim, courts are to freely give leave to amend a complaint under Federal Rule of Civil Procedure 15 "when justice so requires."[2]  When a pleading would require modifying the Court's scheduling order, Rule 16 requires a showing of good cause.[3]

Under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[4]  To survive a motion to dismiss, the plaintiffs must allege enough facts "to state a claim to relief that is plausible on its face."[5]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6]  "The plausibility standard is not akin to a 'probability requirement,' but it

---

[2] FED. R. CIV. P. 15(a)(2).

[3] *Id.* 16(b)(4).

[4] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

asks for more than a sheer possibility that a defendant has acted unlawfully."[7] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[8]

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9]  "A fact is material if it 'might affect the outcome of the suit'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[10]  Courts "resolve factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[11]  Thus, "the nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'"[12]

---

[7] *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

[8] *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

[9] FED. R. CIV. P. 56(a).

[10] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (alteration in original) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[11] *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir.2005)).

[12] *Hathaway v. Bazany*, 507 F.3d 312, 219 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).

5

### III.  Application

#### A.  Motion to Strike Counterclaim

Plaintiffs contend the Court should strike the counterclaim from HMK Ltd. and HMK Mortgage's answer for three reasons.  First, the counterclaim was filed after the deadline for adding claims in the scheduling order.  Second, the defendants filed their counterclaim 90 days after the 14-day deadline in Federal Rule of Civil Procedure 15(a)(3).  And third, the defendants' counterclaim violates a joint stipulation the Court accepted, which says that the defendants would not enforce paragraph 11 of the Deeds of Trust.

The motion to strike also contains a motion to dismiss the counterclaim in the event the Court does not strike it.  The motion to dismiss argues the counterclaim fails to meet the plausibility standard for alleging breach and damages. Alternatively, if the Court allows the counterclaim to proceed, the plaintiffs ask for leave to amend to add claims for the defendants' breach of the stipulation of the parties.

HMK Ltd. responds that it was never properly served and was merely responding (voluntarily) to the plaintiffs' retaliation claims in their second amended complaint.  It further contends that the counterclaim doesn't violate the stipulation because HMK Ltd. stipulated to defer its self-help remedies under paragraph 11— necessitating the present counterclaim for eventual relief.  HMK Mortgage responds that it should be granted leave to file its counterclaim in the same pleading as HMK Ltd. because the counterclaim is inextricably intertwined with the plaintiffs' new

counterclaim, the plaintiffs will have ample time to prepare a defense to it, and the counterclaim does not violate the Court stipulation. And finally, both HMK Mortgage and HMK Ltd. would prefer allowing the plaintiffs to add relevant claims over the Court striking its counterclaim.

Regarding HMK Ltd. as to the first two arguments (that the counterclaim came after the scheduling order and Rule 15 deadlines), the Court agrees with HMK Ltd. The plaintiffs added HMK Ltd. after the scheduling order deadline for adding parties and claims. But the counterclaim was filed in response to the second amended complaint and did not require a change to the scheduling order, so the good cause standard of Rule 16 doesn't apply.[13] Likewise, the Court will not impose the 14-day deadline from Rule 15(a)(3) because the plaintiffs never properly served HMK Ltd. to bring those deadlines into play.[14]

But, regarding the second argument, the Court agrees with the plaintiffs that leave should not be granted to HMK Mortgage. The Court finds that granting leave to HMK Mortgage at this juncture would unduly prejudice the plaintiffs. On amending pleadings, the Supreme Court made clear that, "[i]t is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the

---

[13] *See* FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

[14] The plaintiffs complain that HMK Ltd. asked for a waiver off service of process but never returned it. This is indeed annoying. But it doesn't change the fact that a party who hasn't been served or waived service isn't bound by the 14-day deadline to respond in Rule 15(a)(3).

trial court."[15]  And although courts should generally give leave freely when justice so requires, granting leave "is by no means automatic."[16]  In deciding whether to grant leave to amend, the Court "may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment."[17]

Here, HMK Mortgage filed its amended answer on September 4, 2019, nearly three months after the plaintiffs' filed their amended complaint on June 24, 2019.  As the plaintiffs noted, Rule 15(a) sets a 14-day deadline for filing such an answer. Additionally, HMK Mortgage never moved for leave to add a counterclaim under Rule 15(a) and instead, over a month later, first requested such leave "after the fact" in its reply to plaintiffs' motion to strike.  Lastly, to grant leave at this juncture would burden the plaintiffs with preparing for a new claim when trial is set on June 15, 2020—less than two months from now.  For these reasons, the Court finds that granting HMK Mortgage's leave to amend its answer to include its counterclaim would unduly prejudice the plaintiffs.[18]

---

[15] *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971).  *See, e.g., Connect Insured Telecom, Inc. v. Qwest Long Distance, Inc.*, 2011 WL 445000, at *1 (N.D. Tex. Feb. 8, 2011) (concerning a motion requesting leave to amend an answer).

[16] *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (quoting *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981)).

[17] *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[18] The Court need not reach the final argument that the counterclaim violates the stipulation. The Court already held that HMK Mortgage may not bring a counterclaim due to prejudice to the plaintiffs.  HMK Mortgage and not HMK Ltd. was the party to the stipulation.

For the reasons stated above, the Court grants the motion to strike the counterclaim as to HMK Mortgage and denies the motion to strike the counterclaim as to HMK Ltd.[19]

## B.  Motion to Dismiss

But the motion to strike also contained a motion to dismiss HMK Mortgage and HMK Ltd.'s counterclaim for failing to meet the plausibility standard in alleging breach and damages.  And the plaintiffs seek leave to amend to add claims for the defendants' breach of the stipulation of the parties if the Court allows the claim to proceed.  The defendants respond that their pleading of breach and damages is that paragraph 11 affords them the remedy of declaring the loan in default and foreclosing on the properties.  The defendants would rather have the plaintiffs amend their pleading a final time to add corresponding claims than to have their pleading struck.  As the Court has granted plaintiffs' motion to strike as to HMK Mortgage's counterclaim, the Court need not address the motion to dismiss as it applies to HMK Mortgage.  Thus, the Court only analyzes the motion to dismiss as it applies to HMK Ltd.

---

[19] In light of this decision, the Court need not reach the issues of good cause and prejudice to the plaintiffs.  The good cause standard of Rule 16 is triggered when "[a] schedule may be modified." FED. R. CIV. P. 16(b)(4).  This responsive pleading required no amended schedule.  This is particularly true because it was the plaintiffs' live pleading that opened the door to the counterclaim and early enough into the discovery period to accommodate any such claim.  To the extent any new discovery is needed, the Court will entertain a request on what limited discovery would be needed and why it did not occur before the discovery deadline.

While the pleading recitations are rather threadbare for breach and damages allegations, this does seem to correspond with paragraph 11's brevity and clarity. Paragraph 11, according to the counterclaim, provides:

> Grantors shall be in default hereunder if Grantor[] . . . institutes or voluntarily is or becomes a party to any other judicial proceedings intended to effect a discharge of the debts of Grantors or of any guarantor or surety, in whole or in part, or to effect a postponement of the maturity or the collection thereof, or to effect a suspension of any of the right or powers of Beneficiary granted in the Note, this Deed of Trust or in any other instrument evidencing or securing the indebtedness secured hereby . . . .[20]

HMK Ltd. pleads that more than participation in a federal lawsuit is required under paragraph 11, but that it is met because the plaintiffs used this lawsuit to void or suspend their rights to foreclose on the collateral, which HMK Ltd. contends that paragraph 11 expressly forbids. The damages HMK Ltd. seeks are the remedy afforded in paragraph 11 itself: to be able to hold the plaintiffs in default and seek to foreclose on the collateral. The Court concludes these allegations, while brief, move the needle from possibility to plausibility and comply with *Twombly* and *Iqbal*. Accordingly, the Court denies the motion to dismiss.

The final issue in the motion to strike and dismiss is the plaintiffs' request for "leave to amend their complaint to add claims directly related to Defendants' counterclaim, which breaches The Stipulation of the Parties and further retaliates against Plaintiffs."[21] Here, the Court has already determined that the stipulation

---

[20] Defendants' Answer to Plaintiff's Second Amended Complaint ¶ 173 [Doc. No. 42].

[21] Plaintiffs' Motion to Strike and Dismiss Defendants' Counterclaim, at 9 [Doc. No. 43].

was only temporary in nature and the counterclaim seeks permanent relief at the end of the proceeding.  This is not a valid basis for plaintiffs to amend their complaint.  If the plaintiffs seek to amend to add the factual allegation of the claim as an additional basis of retaliation, they should file a motion for leave with a full explanation.  The only explanation in the current filing is that the request is unopposed.

### C.      Motion for Partial Summary Judgment

HMK Ltd. and HMK Mortgage make different summary judgment arguments. The Court takes each in turn.

#### 1.   HMK Ltd.'s Motion for Summary Judgment

HMK Ltd. contends that each plaintiff signed a release that bars any claims related to their leases, and that HMK Ltd. could not have been involved in alleged retaliation after closing because its role was selling the plaintiffs their homes.  The plaintiffs respond that (1) the Truth in Lending Act bars releases like this; (2) a release related to leases does not apply to the sale of their homes; and (3) fact disputes exist regarding a document they didn't understand because it wasn't in their native language.

The Court agrees with the plaintiffs that the release was not for the types of claims the plaintiffs have brought.  But the Court also holds, based on the summary-judgment record, that Campos and Barahona's claims are truly against HMK Mortgage for the financing of their homes.  Campos and Barahona are suing for retaliation after the sale of their homes, not for matters occurring when they leased homes from HMK Ltd.  The release is only for claims "arising out of the transactions

11

or occurrences between them," which it defined to be "a relationship as Landlord and Tenant under a short form written month to month lease for a period of time" for the specific homes each plaintiff had leased prior to buying that or a different home.[22]  As such, a release of any claims related to the leases are immaterial to the present retaliation claims.

Morales's claims are also for Americans with Disabilities Act violations, Texas Architectural Barrier Act violations, and Human Resources Code chapter 121 violations based on events and architectural barriers at the HMK Ltd. and HMK Mortgage office when he was trying to purchase a home.  These claims are also related to a purchase and not the prior lease.  As such, the waiver doesn't apply to Morales's architectural barrier claims.  Accordingly, the Court need not address the plaintiffs' additional arguments.

In response to HMK Ltd.'s argument that HMK Ltd. could not have been involved in retaliation after it sold the homes, the plaintiffs concede they are not bringing their retaliation claim against HMK Ltd.[23]  The Court takes the plaintiffs at

_____

[22] HMK Mortgage's Motion for Leave to File Missing Pages from Mortgage LLC MSJ Appendix, Exhibit 1 (Supplement to MSJ Appendix), at 8–9 (Campos), 12–13 (Barahona), & 16–17 (Morales) [Doc. No. 65-1].

[23] *See* Plaintiffs' Brief in Support of Their Response to Defendants' Motions for Summary Judgment, at 14 [Doc. No. 57-1]("Plaintiffs do not have claims for retaliation against HMK Ltd. Therefore, its motion for summary judgment should be denied as moot with regard to this argument."). The only non-architectural barrier claim stated as against HMK Ltd. is the claim for violations of the federal and Texas Fair Housing Acts.  *See* Plaintiffs' Second Amended Complaint ¶ 90 [Doc. No. 39] ("Defendants violated the federal and Texas Fair Housing Acts . . . .").  This claim alleges discrimination based on protected-class status and retaliation.  As explained below, the plaintiffs elected in the second amended complaint and at summary judgment to proceed on a retaliation theory. That theory is based on facts that occurred long after closing and therefore after HMK Ltd. was out of the picture.

their word.  As a result, the only currently viable claim (other than architectural barrier claims) against HMK Ltd. is for retaliation, but there is no evidence that HMK Ltd. (as opposed to HMK Mortgage) committed the acts of retaliation that the plaintiffs complain of.[24]  Thus, the Court grants in part and denies in part HMK Ltd.'s motion for summary judgment.  The Court denies the motion as to the Texas Deceptive Trade Practices Act claim and the Americans with Disabilities Act/Chapter 121/Texas Architectural Barriers Act claim.  The Court grants the motion as to the remaining claims.

### 2.  HMK Mortgage's Motion for Partial Summary Judgment

HMK Mortgage moved for partial summary judgment on the following claims: (1) the Truth in Lending Act claim; (2) the federal and Texas Fair Housing Act claim; and (3) retaliation claims under the federal or Texas Fair Housing Acts or the federal Equal Credit Opportunity Act.  The Court takes each claim in turn.

<u>Truth in Lending</u>:  HMK Mortgage makes two arguments on the Truth in Lending claim: (1) the disclosures were compliant with the Truth in Lending Act (as evinced by the certification of the law firm that drafted them) and were provided to the plaintiffs over a week before closing; and (2) there is no evidence of causation or damages.  The plaintiffs respond that: (1) there are factual disputes that HMK Mortgage violated the Truth in Lending Act by only examining rental history and

---

[24] Likewise, the plaintiffs' argument that the Truth in Lending Act forbids such releases does not prevail.  The plaintiffs brought no Truth in Lending Act claim against HMK Ltd., perhaps because it wasn't a lender.  *See* Plaintiffs' Second Amended Complaint ¶ 81 [Doc. No. 39] ("HMK Mortgage violated the Truth in Lending Act . . . .").

failing to timely provide required disclosures; and (2) the plaintiffs only seek statutory damages and not actual damages.

The Court agrees with the plaintiffs that there is a fact dispute about whether HMK Mortgage's consideration of rental history alone violated the Truth in Lending Act. The Truth in Lending Act prohibits creditors like HMK Mortgage from offering a loan without making a "reasonable and good faith determination based on verified and documented information that, at the time the loan is consummated, the consumer has a reasonable ability to repay the loan, according to its terms[.]"[25] The Act further provides that:

> A determination under this subsection of a consumer's ability to repay a residential mortgage loan shall include consideration of the consumer's credit history, current income, expected income the consumer is reasonably assured of receiving, current obligations, debt-to-income ratio or the residual income the consumer will have after paying non-mortgage debt and mortgage-related obligations, employment status, and other financial resources other than the consumer's equity in the dwelling or real property that secures repayment of the loan. A creditor shall determine the ability of the consumer to repay using a payment schedule that fully amortizes the loan over the term of the loan.[26]

And the investigation alone is insufficient. The Act requires income verification:

> A creditor making a residential mortgage loan shall verify amounts of income or assets that such creditor relies on to determine repayment ability, including expected income or assets, by reviewing the consumer's Internal Revenue Service Form W–2, tax returns, payroll receipts, financial institution records, or other third-party documents that

---

[25] 15 U.S.C. § 1639c(a)(1).

[26] *Id*. § 1639c(a)(3).

provide reasonably reliable evidence of the consumer's income or assets.[27]

Here, there is a genuine dispute of material fact about whether HMK Mortgage considered anything beyond the plaintiffs' rental history and verified income or assets under 15 U.S.C. § 1639c(a)(4).[28]

Regarding causation and damages, the Court agrees with the plaintiffs that their claims and evidence do not allow for recovery of actual damages but instead seek statutory damages. HMK Mortgage makes two arguments in response. First, it argues that the statute only allows statutory damages for violation of "any requirement under section 1635 of this title, subsection (f) or (g) of section 1641 of this title, or part D or E of this subchapter," and those provisions do not contain the disclosure requirement the plaintiffs say was breached here.[29] The problem with this argument is that it omits a key provision of the statute: "*any creditor who fails to comply with any requirement imposed under this part*, including any requirement under section 1635 of this title, subsection (f) or (g) of section 1641 of this title, or part D or E of this subchapter" is liable for statutory damages.[30] The disclosure requirements are not far from section 1640. They are in section 1639.[31] And the

---

[27] *Id.* § 1639c(a)(4).

[28] *See, e.g.*, Response Appendix, Exhibit C (Oral and Videotaped Deposition of HMK Mortgage By and Through Its Representative Khraish Khraish on June 5, 2019), at 277 [Doc. No. 59-1]. *See also, e.g.,* Response Appendix, Exhibit A (Oral Deposition of Debbian Ramos on April 9, 2019), at 110–11 [Doc. No. 59].

[29] 15 U.S.C. § 1640. *See* Defendants' Reply Brief in Support of Their Motion for Summary Judgment, at 6 [Doc. No. 64] ("The alleged requirement that plaintiff take home a copy of their written disclosures is not a requirement of these sections.").

[30] 15 U.S.C. § 1640(a) (emphasis added).

[31] *Id.* § 1639.

means to pay assessment is in section 1639c. Both are in "Part B, Credit Transactions" under Chapter 41 and thus generally allow for statutory damages.

HMK Mortgage's second argument here is that the violation must be "material" to qualify for statutory damages, and the violations here were immaterial because (1) the monthly payments during ownership are the same as they were during the lease, and (2) the plaintiffs signed statements saying they read the disclosures and obtained copies. Neither argument avails HMK Mortgage. Regarding the payment remaining the same, HMK Mortgage's argument misses the point the plaintiffs make: that the cost of repairs and increasing property taxes (previously subsumed into the lease) now fell on them. The Court does not believe that HMK Mortgage saying this was immaterial either complies with its burden under section 1640 to "demonstrate that the failure to comply is not material"[32] or carries its burden as a party moving for summary judgment under Federal Rule of Civil Procedure 56.[33] And regarding whether the plaintiffs received a copy of the disclosures, the plaintiffs testified they were not able to keep a copy before closing or understand what the terms meant when they signed them.[34] And HMK Mortgage testimony from Guadalupe Gutierrez and

---

[32] *Id.* § 1640(a)(2)(B)(4).

[33] To the extent HMK Mortgage was raising a no-evidence point on this issue and that such a motion is proper in light of the statute placing the burden on HMK Mortgage to demonstrate immateriality, the plaintiffs have raised a genuine dispute of material fact regarding the materiality of the alleged lack of disclosures before closing and the lack of income investigation and verification.

[34] *See* Response Appendix, Exhibit G (Declaration of Julian Campos), at 455 [Doc. No. 59-3] (saying that Guadalupe Gutierrez "did not provide me with copies of any of the documents, or even offer to make copies at all"); Response Appendix, Exhibit H (Declaration of Roberto Barahona), at 559 [Doc. No. 59-4] ("My closing meeting with HMK was on October 12, 2017. I remember that day well because it was the first day I was ever provided copies of any mortgage documents I could keep."); Response Appendix, Exhibit I (Declaration of Martin Morales), at 663 [Doc. No. 59-5] ("She made me

Debbian Ramos did not rebut that testimony.[35]  As a result, the Court denies HMK

Mortgage's motion for summary judgment on the Truth in Lending claim.

Federal and Texas Fair Housing Act and Equal Opportunity Act Discrimination: HMK Mortgage makes a variety of arguments that there is no fact dispute over the plaintiffs' claims for discrimination under the federal and Texas Fair Housing Acts.  In response, the plaintiffs point out that their second amended complaint (the live pleading) dropped any disparate impact discrimination claims because the plaintiffs could recover the same damages under a retaliation claim.

The Court agrees with the plaintiffs that they have not brought disparate impact discrimination claims in their live complaint.  The live complaint even specifies why:

> In their Original and First Amended Complaint, the Plaintiffs retained disparate impact claims under the Equal Credit Opportunity and Fair Housing Acts.  While these claims were active, HMK Mortgage, LLC retaliated against Plaintiffs by declaring them in default of their loans because they filed this lawsuit.  Since relief would be duplicative for claims under these laws under disparate impact and retaliation theories, the Plaintiffs intend to simply pursue relief under claims of retaliation.[36]

The plaintiffs' summary judgment response summarizes their position as: "Plaintiffs do not request relief under the FHA and ECOA for disparate impact

---

sign documents but she did not explain to me what they were, just that they had to do with the purchase of the house.  She did not give me any copies to keep and told me I would only get copies of documents at my closing.").

[35] *See generally* Response Appendix, Exhibit A (Oral Deposition of Debbian Ramos), at 9:17–25, 33:21–34:17, 35:17–36:23 [Doc. No. 59]; Response Appendix, Exhibit B (Oral Deposition of Guadalupe Gutierrez), at 86:21–23, 90:12–15, 124:1–126:3 [Doc. No. 59].

[36] Plaintiffs' Second Amended Complaint ¶ 98 [Doc. No. 39].

discrimination."[37]  As a result, the Court construes their live complaint as bringing claims for retaliation and discriminatory intent (rather than for disparate impact discrimination) under the federal and Texas Fair Housing Acts and Equal Credit Opportunity Act.  Because the plaintiffs do not bring disparate impact discrimination claims against HMK Mortgage, its arguments regarding those theories are moot.

To the extent the plaintiffs still have a discriminatory intent claim under the federal or Texas Fair Housing Acts and Equal Credit Opportunity Act, HMK Mortgage is entitled to summary judgment on that claim.  Discrimination under the federal Fair Housing Act, for example, can take the form of discriminatory intent or discriminatory effect (often called disparate impact).[38]  HMK Mortgage did not restrict its discrimination arguments to disparate impact theories.  In its summary judgment motion, it argued that there was no evidence of discrimination against the plaintiffs because of any protected class (a necessary element of federal and Texas Fair Housing Act claims) or evidence of an adverse action as a result of being in a protected class (a necessary element of an Equal Credit Opportunity Act claim).  HMK Mortgage put forth evidence that it only made loans to longtime tenants of HMK Ltd.[39]  Because of HMK Mortgage's no-evidence argument, the plaintiffs had the

---

[37] Response to Motion for Summary Judgment, at 20 [Doc. No. 57-1].

[38] *See Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1555 (5th Cir. 1996) ("We agree that a violation of the FHA may be established not only by proof of discriminatory intent, but also by a showing of significant discriminatory effect.").

[39] *See* Defendants' Supplement to MSJ Appendix, Affidavit of Khraish Khraish, at 2 [Doc. No. 65] ("For those long-time tenants who did not wish to relocate, it made sense for HMK, Ltd. to offer them the opportunity to purchase their existing home or another home from HMK, Ltd.'s inventory.").

burden to offer evidence of discriminatory intent (on the Fair Housing Act claims) or an adverse action (on the Equal Credit Opportunity Act claims). The plaintiffs did not, opting instead to seek the same relief through their retaliation claim.[40] Accordingly, if the plaintiffs' complaint has discriminatory intent theories under their federal and Texas Fair Housing Act claims and Equal Credit Opportunity Act claim, the Court grants summary judgment to HMK Mortgage and dismisses those claims with prejudice.

Retaliation under federal and Texas Fair Housing Acts and Equal Credit Opportunity Act: HMK Mortgage argues that any retaliation claims fail as a matter of law because: (1) the plaintiffs' only evidence of retaliation is a Rule 408 settlement discussion, and (2) there is no evidence that HMK Mortgage has retaliated because it announced its belief that the plaintiffs are in default by filing suit to rewrite their mortgages—not that HMK Mortgage is foreclosing on their homes. The plaintiffs respond that other evidence of retaliation exists in the form of repeated deposition questions HMK Mortgage's counsel asked the plaintiffs. The questions were about

---

[40] The plaintiffs did offer evidence supporting a disparate impact theory but then acknowledged they are not bringing disparate impact claims and are instead relying on a retaliation theory. *See* Response to Motion for Summary Judgment, at 21 [Doc. No. 57-1] ("This evidence creates a genuine issue of material fact whether Defendant could be liable for the disproportionate impact of their lending practices that included the mortgage loans they made to Plaintiffs. Regardless, Plaintiffs seek to alleviate the unnecessary burden on the decisionmaker where the same law has been violated twice. The retaliation by HMK Mortgage, LLC is, as discussed below, straightforward, and unlawful conduct includes not only retaliation against a person for making a complaint, but also for testifying, assisting, or participating in any manner in a proceeding."). The evidence the plaintiffs cite demonstrates effect—not direct evidence of intent. Accordingly, the showing of evidence of effect does not impact the Court's determination on intent.

whether the plaintiffs knew the filing of their suit triggered a default that meant they could lose their homes and pay HMK Mortgage's attorney's fees.

The parties do an inadequate job briefing this issue, so it's up to the Court to figure it out.  The federal Fair Housing Act makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of [the Act].[41]  Courts generally analyze retaliation claims the same under the Fair Housing Act as those under Title VII and other employment discrimination laws.[42]  To assert a prima facie case of retaliation, a plaintiff must show " that (1) he engaged in an activity that [the Fair Housing Act] protects; (2) he was subjected to an adverse [action by the defendant]; and (3) a causal connection exists between the protected activity and the adverse . . . action."[43]  Once a plaintiff has made out a prima facie case of retaliation, the burden shifts to the defendant "to state a legitimate, non-retaliatory reason for its decision."[44]  After the defendant

---

[41] 42 U.S.C. § 3617.

[42] *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) (saying that the "prohibition on retaliation under the ADA" is "similar to Title VII's prohibition on retaliation," and so we "assess ADA retaliation claims under the same framework we employ for retaliation claims arising under Title VII"); *Texas v. Crest Asset Mgmt., Inc.*, 85 F. Supp. 2d 722, 733 (S.D. Tex. 2000) ("Retaliation claims brought pursuant to the FHA are analyzed under the same standards that are applied to retaliation claims brought under Title VII and other employment discrimination statutes."); *Avalon Residential Care Homes, Inc. v. City of Dallas*, 2011 WL 4359940, at *8 (N.D. Tex. Sept. 19, 2011) (applying the standard used in retaliation claims brought under Title VII to a Fair Housing Act retaliation claim).

[43] *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007) (citing *Harvill v. Westward Commc'ns, L.L.C.,* 433 F.3d 428, 439 (5th Cir. 2005)); *see Avalon Residential Care Homes, Inc.*, 2011 WL 4359940, at *8 (applying this framework to a Fair Housing Act claim)..

[44] *Id.*

states its non-retaliatory reason, "the burden shifts back" to the plaintiff to demonstrate that the defendant's "reason is actually a pretext for retaliation."[45]

The Court believes the Supreme Court has recognized that Congress established a different causation standard for these retaliation statutes. Title VII's nondiscrimination provision makes it unlawful if membership in a protected class "was *a motivating factor* for any employment practice, *even though other factors also motivated the practice*."[46] This language led courts to use a "mixed motive" causation standard in Title VII cases that, for example, asks if the impermissible act was a "significant factor" in the adverse action.[47] But as the Supreme Court pointed out in *University of Texas Southwestern Medical Center v. Nassar*, Title VII's anti-retaliation provision reads differently as to causation:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . *because* he has opposed any practice made an unlawful employment practice by this subchapter, or *because* he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.[48]

---

[45] *Id*. at 388–89.

[46] *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 349 (2013) (quoting 42 U.S.C. § 2000e-2(m)) (emphases added).

[47] *Simms*, 83 F.3d at 1556 ("The evidence taken as a whole must also create a reasonable inference that race was a significant factor in the refusal." (citing *Polanco v. City of Austin, Texas,* 78 F.3d 968, 977–78 (5th Cir. 1996))).

[48] *Nassar*, 570 U.S. at 352 (quoting 42 U.S.C. § 2000e-3(a)) (emphases added).

Unsurprisingly, when the Court followed the language Congress used, it adopted a "but for" causation standard for Title VII retaliation cases in light of the "because of" language in the statute.[49]

Would *Nassar* apply here and render a but-for causation standard for Federal Housing Act retaliation cases?  The federal Fair Housing Act makes it unlawful to: "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or *on account of* his having exercised or enjoyed . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of" the Act.[50]  "On account of" has the same textual meaning as "because of" and does not reflect a Congressional intent to lower the causation standard like with the nondiscrimination provision of Title VII (that impermissible retaliation was a motivating factor, even though there may have been other motivating factors).[51]  Indeed, the Supreme Court has stated "[t]he words 'because of' mean 'by reason of: on account of'" and has noted how both "because of" and "on account of" imply but-for causation.[52]  Thus, if the Supreme Court or Fifth Circuit were to weigh the issue, this Court believes they would hold as the Supreme Court did in *Nassar*: the Federal Housing Act retaliation statute requires but-for causation.

---

[49] *Id.* ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." (citing *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167. 176 (2009))).

[50] 42 U.S.C. § 3617 (emphasis added).

[51] *See Nassar*, 570 U.S. at 349 ("This, of course, is a lessened causation standard.").

[52] *Gross,* 557 U.S. at 176.

Applying that framework here, the plaintiffs must make a prima facie case that (1) they engaged in a protected activity, (2) they were subject to adverse action by HMK Mortgage, and (3) the adverse action was on account of (or because of) their protected activity.[53] These plaintiffs have made their prima facia case.  First, they have shown they filed their lawsuit with Fair Housing Act claims, which is a protected activity.  Second, they have pointed to statements from counsel for HMK Mortgage to the plaintiffs that the filing of the lawsuit rendered them in default, which could constitute the adverse action of "coerc[ion], intimidat[ion], [or] threat[s]" that the Fair Housing Act forbids.[54]  Third, the plaintiffs have shown that, but for the filing of their lawsuit with Fair Housing Act claims, the statements they point to as coercion, intimidation, and threats would not have occurred.

And so the burden shifts to HMK Mortgage to demonstrate a nonretaliatory reason for its actions.  HMK Mortgage's response is:

> Thus, it is not the Plaintiffs' mere participation in a federal lawsuit, or more specifically, their allegation of racial discrimination under the Fair Housing Act which creates an event of default under the deed of trust. It is their effort to re-write the terms of the deed of trust itself, by seeking to void or suspend the rights granted HMK Mortgage, LLC in the deed of trust to foreclose upon its collateral, which amounts to an event of default under Paragraph 11.[55]

---

[53] *See LeMaire*, 480 F.3d at 388 (providing three-part *McDonnell Douglas* test for retaliation claims under Title VII).

[54] 42 U.S.C. § 3617 (because the plaintiffs admitted into the summary judgment record statements of counsel during depositions, the Court need not reach the issue of whether the letter with similar statements that HMK Mortgage labeled a Rule 408 settlement discussion is admissible).

[55] Motion for Summary Judgment, at 19 [Doc. No. 52].

HMK Mortgage also argues it has no financial incentive to foreclose on the plaintiffs' houses because any amount over what the plaintiffs over would revert to the plaintiffs.

Neither of these arguments are non-retaliatory reasons for HMK Mortgage's actions. The first argument is that the alleged acts of retaliation were due to the plaintiffs seeking to rewrite their contracts. But the Fair Housing Act grants the right to sue to enforce its threshold protections and to be free from retaliation for filing that suit. And HMK Mortgage's framing of the lawsuit as an attempt to rewrite the contracts doesn't escape the fact that the lawsuit originally had Fair Housing Act claims. HMK Mortgage's second assertion fares no better. Its circumstantial argument that it doesn't financially profit from foreclosing on the plaintiffs' homes is not a stated, nonretaliatory reason for its allegedly retaliatory conduct. As a result, HMK Mortgage has not carried its burden of stating nonretaliatory reasons for its actions and is not entitled to summary judgment on the retaliation theories in the federal and Texas Fair Housing Act and Equal Credit Opportunity Act claims.

### 3. Claims Remaining for Trial

As a result of this ruling, the following claims will proceed to trial:

- All plaintiffs' Truth in Lending claims (that only seek statutory damages) against HMK Mortgage because of the Court's denial of summary judgment.

- All plaintiffs' federal and Texas Fair Housing Act claims against HMK Mortgage, which have the live theory of retaliation. The plaintiffs have abandoned a disparate impact theory, and the Court granted summary

judgment on a discriminatory intent theory.  The Court also granted summary judgment to HMK Ltd. as to these claims.

- All plaintiffs' Equal Credit Opportunity Act claims against HMK Mortgage, which has the live theory of retaliation.  The plaintiffs' have abandoned a disparate impact theory, and the Court granted summary judgment on a discriminatory intent theory.  The Court also granted summary judgment to HMK Ltd. as to this claim.

- All plaintiffs' Texas Deceptive Trade Practices claims against HMK Mortgage. This was not the subject of HMK Mortgage's motion for partial summary judgment.

- Morales's Americans with Disabilities Act, Chapter 121, and Texas Architectural Barriers Act claims against HMK Ltd. and HMK Mortgage.  This was not the subject of HMK Mortgage's motion for partial summary judgment. And although HMK Ltd. moved for summary judgment on all claims, the Court denied the motion for HMK Ltd. as to these particular claims.

## IV.  Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the plaintiffs' motion to strike.  The Court **GRANTS** the motion as it pertains to HMK Mortgage's counterclaim but **DENIES** the motion as to HMK Ltd.'s counterclaim.

The Court also **DENIES** the plaintiffs' motion to dismiss HMK Ltd.'s counterclaim.

The Court further **GRANTS IN PART AND DENIES IN PART** HMK Ltd.'s motion for summary judgment.  The Court **GRANTS** the motion as to all claims except for Morales's architectural barrier claims (under the Americans with Disabilities Act, Chapter 121, and the Texas Architectural Barriers Act) but **DENIES** the motion as to all of Morales's aforementioned architectural barrier claims.

Lastly, the Court **DENIES** HMK Mortgage's motion for partial summary judgment.

**IT IS SO ORDERED** this 28th day of April, 2020.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE